Good afternoon, Deepak Gupta for petitioners Lai and Morgan. I will be dividing time with Mr. Lockwood for the State Labor Commissioner and I will exclusively address the threshold lack of statutory authority on the part of the agency and he will address the remaining issues. The state laws at issue here have been in the books for a century. As this court recognized in DILTS, there are normal background rules for all employers doing business in the field. Until recently, the FMCSA consistently adhered to the position that it had no authority to preempt such generally applicable background laws and indeed these very California state laws because they are not laws on commercial motor vehicle safety. That is, they are not laws specifically directed motor vehicle safety. The agency's prior long-standing position is correct. The Mr. Gupta, let me ask you a question. Put aside the history of this because as I understand it you're not making an argument that they couldn't change their minds or that they didn't they didn't sufficiently explain their reason for the agency's rule one on motor vehicle safety? Yes. Not the California, not the California rule but the agency's rule. Yeah, the agency's hours of service rule is specifically directed at commercial motor vehicle safety and I okay so so your is your argument that the Calif to qualify for preemption at least under the broad statutory provision, the initial one, the California rule must only be directed to motor vehicle safety? That's right and that's the agency's that's the agency's long-standing position. It's the position that... Okay, I said put aside there for a second. I'm trying to just approach this as an original matter of statutory construction. Why why should I read the It's not just the word on. I think the natural meaning of the word on is on the topic of... But I think... That's 3112RD. That's the provision that requires the state to engage in a pre-clearance review of motor carrier, commercial motor carrier vehicle laws. And what it says is that immediately upon enacting such a law, the state must send a copy of that law to the secretary to review it. Now that that pre-clearance provision makes a whole lot of sense if you adhere to the agency's long-standing view and our view that the law has to be a law specifically directed at motor vehicle safety. The state knows when it's enacting such a law or regulation and it knows send it to the Federal Motor Carrier Safety Administration. If you adopt the position that the agency is now taking, that even generally applicable background laws like employment laws or environmental standards or other kinds of laws potentially trigger this pre-clearance review provision. Well, no, I'm not sure it's taking that broad a position. That's the parade of horribles you worry about. In this case, we have a state rule that's directed at transportation workers. To be sure, it's the same as the state rules in other areas, but it doesn't differentiate between motor carrier folks and other folks. I mean, they're saying, you know, don't worry about the parade of horribles in enacting a regulation on this topic, but if you look at it from the state's perspective, it is important to carry out subsection D if generally applicable laws apply, right? Because there's a pre-clearance provision here. It requires the state to send those laws to the agency. It requires the agency to review those laws. In every previous application of this statute up until now, it concerned things like Mississippi law about gravel trucks. These were very fine-grained rules that had to do with commercial motor vehicle safety. Well, I understand your position, but let me ask the question a little bit slightly differently. So let's assume California said, well, we're promulgating this wage and hour rule or the state rule. I'm getting somebody's papers are rustling here, but I think I can hear you. And we could do it to one of two ways. We could do it specifically to drivers and a second one specifically to the rest of the industry, or we can do it all in one. And if we do it all in one, then we can escape federal scrutiny, but if we do it separately, we'll be subject to federal scrutiny. That just sort of strikes me as not really what the federal rule was about. So respond to that. I understand that in that kind of scenario, it can seem a little formalistic. But remember that there's always going to be implied conflict. There's always going to be preemptive and supremacy. Now, when the agency came before you in guilt, they told you that there wasn't an implied conflict between this federal, the same federal rule that you have in federal law. But, but, you know, you're correct. And if the state specifically for motor vehicle safety and trigger this authority, if the state does a general law, it will it will not trigger. That doesn't mean that there couldn't be. There's always going to be obstacles. There's always going to be conflict. This is a scheme where Congress actually instructs the agency, make sure that you leave goals for state safety regulations. They said when you draft your regulations, make sure to minimize preemption. But the entire statutory scheme and the way that it has been consistently that what the federal agency is doing is preparing regulation that is specifically about this industry, motor vehicle carriers and state laws that have to do with that. It's no small matter because when an agency has previously adopted a statutory authority to preempt, that's very strong evidence that the statute lacks the clear congressional demands necessary. Let me let me ask you this, Mr. Gupta, on the on the plain statutory language and the structure of the statute. I am inclined to think that you've got the better of the argument, but it's not assuming that we say, well, OK, maybe you have the better of the argument in terms of plain language reading, but it's not entirely clear. If we do get to the next step, which is that the Chevron step two analysis, then to what extent do we have to give the agency interpretation deference? Can you briefly address that? I want to take one small issue with the premise of your question. Because I think if we realize we have the better reading, before you get to Chevron, I think the presumption against preemption does work. I'm sorry, you're breaking up and I missed that last part of your answer. Oh, I'm sorry. The presumption against preemption, I think, kicks in before you ask the question about deference, because the presumption is one of the ordinary tools of the statute. Sure, but let's assume we apply the presumption against preemption and we say, you know, I'm a little more persuaded by your argument, but it isn't clear. So now let's look at whether we owe the agency interpretation deference. What do we do about that? I think what the Supreme Court has said most recently about Chevron deference is that it only kicks in when there is genuine ambiguity in the statute. That means that the court can conclude that all the other tools of statutory construction don't resolve the ambiguity. That's why I say the presumption is so important under Bates and other cases. When you reach that stage, then you should, I think, conclude that there is not a clear congressional demand for preemption. But I'll concede that the Supreme Court has not been very clear about the extent to which an agency can receive Chevron deference for its own interpretation of its own authority to preempt. The Supreme Court has never held that such deference exists. First Circuit's decision in Grosso surveys all of the cases and says that the court of appeals has never put forth an effort under those circumstances. And so in candor, I think it is an unsolved question. But I think because of the presumption against preemption, in effect, you have two rules that are about what you do with ambiguity, right? The presumption against preemption says if you have genuine ambiguity, if there are equally plausible readings, and you favor what the court has a duty, you favor the reading that dissipates preemption. I think you don't even get deference. Why would a presumption of preemption apply where there's an express preemption clause and express delegation of the authority to the agency to apply that authority? The Supreme Court has repeatedly held that presumption of preemption applies in both implied preemption and expressed preemption. You're starting to break up again, so I missed that. I'm so sorry. Yeah, go ahead. I think that's binding precedent in this court. I think the DILT case, which is about the same kind of federal regulatory concerns and the exact same kind of law, tells you that the presumption against preemption applies when you're trying to determine the scope of the expressed preemption clause. I also think there's a really important principle that relates to deference. Agencies' consistency is a part of the deference inquiry. So what you said in DILT or the Skidmore deference to the FMCSA is due because it has been consistent. Now, if we know one thing that the FMCSA is due here, we know that it hasn't been used. And in preemption cases in particular, where there are agency interpretations, the Supreme Court has said that is a reason to be dubious. I don't want you to eat too far into Mr. Locker's time. So let's move to Mr. Locker. All right. Thank you, Your Honors. What I want to address is if this court were to conclude that the FMCSA had jurisdiction to even look at California's Muellen rest break rules, why what the FMCSA did was arbitrary and capricious and why the determination should be sent back to the FMCSA. And there's really three points I want to make initially, and then I'll kind of explain them. First of all, the FMCSA determination rests on many misconceptions, a lot of miscomprehension of California law. And there's a miscomprehension with respect to the significant flexibilities that are built into California's Muellen rest break requirements as to the alternative means of compliance that employers have. The second point I want to make is that when FMCSA fails to take into account state interest factors, any preemption analysis must take into account. And this is particularly striking when we look at the analysis that the proceedings did as to undue burden on state commerce. Mr. Lockhart, can I ask you a question about that? Because that's the part of the analysis that interests me. The state's interest, I take it, is the safety and welfare of the drivers? The health and welfare of the drivers. Okay, fair enough. Yes. Fair enough. And also in another regulation, comfort of the driver. And excuse me, not the drivers. Not the drivers. I misspoke. It's all workers in California. Right, right. But at least focusing on what the administration was concerned about. It's the health and safety of the drivers or health and welfare of the drivers or whatever. So if that's true, does that hurt Mr. Gupta's argument that your regulation isn't one on safety? No, it actually is consistent with Mr. Gupta's argument. What this was is, again, you have to go back to the years 1916 and 1932 when California adopted steel and rest break requirements. Workers covered by California's now 17 different industrial welfare commission orders that cover all workers in the state, all industries, all occupations. And what you see there is that IWC and the legislature were not talking about safety. They were talking about employee health and welfare. They were talking about working conditions. They weren't talking about highway safety in any way, shape, or form. And it was not directed at that in any way, shape, or form. I think what is important here is that that is when we do an analysis of undue burden with respect to the state governments, what we're supposed to fix is balance on one side of the equation the punitive local benefit. And the FMCSA did not do that. They admitted. Well, they looked at the safety. They didn't do that. They said, well, okay, this is how California does or doesn't add to safety here. And what they didn't look at is any of the health and welfare benefits. These are drivers. Any workers. They work long hours. They work 11-hour days, 14-hour days, in restrooms during the day. I mean, this is a very basic thing. This is not – this is a matter of human dignity, a matter of worker rights. But to deny state interest in allowing workers to take a break during the day so that they could attend meetings like that, I mean, that has to be part of the equation. That has to be part of the balance. They didn't look at that at all. They admit in their brief that the FMCSA says in page 54 of their brief that we are not required to consider any of this other than we don't have to look at any other punitive local benefit at all. But that's not the proper analysis under PIKE. That's not the proper analysis for undue interference with interstate commerce. So, I mean, I think that's a huge flaw in that determination. I also think there's a huge flaw in the determination is that the FMCSA completely missed, completely is not a part of this determination. Section 17 in the – in all of the IWC orders and in this one, Order 9, Section 17 provides a means for any employer to seek exemptions from the Labor Commissioner from rest period requirements. Can I ask you just a question about the California law? If an employer violates the meal and rest period requirements in California law, is it a – is it also a misdemeanor? I saw a reference to that. I think it was in Section 1199 and maybe in one of the parties' appendices. I believe – and the reason I'm a little perplexed is because in my 20-plus years of working for the Labor Commissioner, I don't believe I've ever seen a misdemeanor prosecution for not providing meal or rest right. I'm a little bit perplexed, but I do think technically you are correct that there is a provision in the Labor Code. It's probably a historic vintage that provides for that. The failure of the FMCSA to consider Section 17 of the IWC order is significant. The California Supreme Court in 2016 – and that's, you know, what it gets to say, what these provisions mean. The California Supreme Court, the Augustus decision in 2016, first of all, ruled against the employer, noting that the employer had the opportunity to go to the Labor Commissioner and get this exemption. And for whatever reason, who knows why, the employer didn't do it. And the court said the employer could have done that. Didn't try. Didn't explain why not. The same thing here. Mr. Lockhart, I want to understand. Your argument is that it can't be an unreasonable burden if they haven't exhausted their remedies to get out of it? Absolutely. Absolutely. Have there been proceedings in which employers have moved to be excused from these requirements? Your Honor, one of my tasks at DLSE is to review those types of employer requests. And I can tell you, since Augustus, we have granted employer requests for exemption from rest period requirements. So, I mean, yes. That's what it's in the IWC order for. I mean, the – what I want to say also is that the FMCSA simply failed to follow congressional dictates how they're supposed to do this test. The test is whether or not there's no safety benefit. Not whether or not there's no safety benefit in excess of any safety benefits provided under the federal regulations. And the point is that we need to have a more stringent state rule that provides no safety benefit. So – No, but that's – that's why I asked you to focus on the third of the requirements in the statute. I think I agree with your argument that they were arbitrary in finding no safety benefit. I was trying to figure out the unreasonable burden. Yeah. On interstate commerce. Well – Yeah. And frankly, Your Honor, I think even to the extent – to the extent that the California regulation, which is not directed – which is not from our legal statement, to the extent that it results in significant safety benefits, there's no doubt about it, has that resolved. Your Honor, we have a situation with so many of these drivers, with the drivers who were the short-haul drivers. They get zero breaks under the federal regulations. No breaks. They can work a 12-hour day with 11 hours of driving and no breaks whatsoever. How can anyone – it is beyond reason to say the requirement – I think we've got your argument, Counsel, and you're out of time, but I'll add a couple of minutes on the clock for rebuttal if you need it. Let's hear from the government. Good afternoon, Your Honor. Jennifer Utrecht on behalf of the MSMCSA. Your Honor, I'd like to begin with the – I'd like to begin with the threshold issue, the question of whether FMCSA has the authority to review California's law as applied to the area of commercial motor vehicle safety. The preemption provision at issue in the case relates to several provisions Congress enacted to ensure as much as possible the field of commercial motor vehicle safety. In addition to this preemption provision, Congress empowered FMCSA to issue regulations on commercial motor vehicle safety, and the scheme envisioned in this preemption review is for FMCSA to take a careful look at state laws in comparison. It's very clear that California's law here, the meal and restaurant law here, are on commercial motor vehicle safety as applied here, because if you look at – Well, I don't know that it's so – I don't know that it's so clear. What do we do with the fact that the agency has never applied preemption in this particular manner? Am I correct in that, in that in all prior instances, the preemption provision has been interpreted by the agency as applied to laws that were directed at motor vehicle safety? Well, yes, Your Honor, but of course, you know, when – Do we have to look at that and the agency's prior interpretations? Well, when this Court reviews the agency's interpretations, you know, it's very clear that agencies are entitled to and, in fact, do often change their view of the law. And as long as there's a clear explanation for why they did that, the fact that there was a prior history of interpreting the provision in a different way, it's completely irrelevant to the question of whether the agency's interpretation here is, in fact, correct for the better reason of the statute. Now, again, you know, Section 31136, which directs the agency to promulgate regulations on commercial motor vehicle safety, specifically directs FMCSA to pass regulations on the operation of commercial motor vehicles to ensure that the operation does not have a deleterious effect on the physical condition of the operators. And the agency invoked that provision when it passed the federal brake requirements. And there's no dispute here that those federal brake requirements are, in fact, on commercial motor vehicle safety. So it stands to reason that California's laws, which likewise impose brake requirements on drivers, are thus on commercial motor vehicle safety. Well, I know I asked Mr. Cook to this question, but Mr. Locker says, gee, these are not really about motor vehicle safety at all. They're about basic human decency. We want people to be able to go to the bathroom every so often and be able to be able to have basic rights in a workplace that don't really necessarily have to do with safety. Nobody thinks they're going to crash the trucks if they don't pee every eight hours, but they'll feel better about themselves and it'll be a better way of treating them. Why? What's wrong with that? And that's what the California Supreme Court has essentially sort of said about the rules. So why should I just presume that because you've set minimum requirements for safety, California can say we're fine with the safety stuff, but we want to help on the human rights side. Well, there's two responses to that, Your Honor. First, of course, a law can have multiple subjective motivating purposes. You know, the analysis of the financial review team isn't whether California subjectively was targeting safety when it promulgated this law. You remember the overarching backdrop here is we're trying to have a uniform safety. So the question is whether the way in which California has approached promoting other local benefits is in fact working with federal uniform safety regulations. And if so, if they're covering the same amount, like it's what the law actually does as opposed to what you subjectively do. What the law actually does is regulate in the same subject matter. But I'm asking the question slightly differently. You've promulgated a law, which nobody doubts is about safety because you've determined that it won't be safe for drivers unless they take breaks every 10 hours or whatever the number is. California says that's fine. We think that's but we'd like to do more for them. We would like to make them comfortable in addition to being safe. So we're passing a reg that's not aimed at safety. The federal minimum safety requirements cover safety fine. We're passing one that deals with human rights. We're passing one that deals with dignity. Ours is not about safety. It's just about rights in the workplace. So that's that's his argument. I think not precisely the way he said it. Maybe I've improved on it. Maybe I've made it worse. But how do we evaluate that argument? So, Your Honor, the text of the statute and the context of this provision plainly directs FDCSA to review state laws in the same subject matter. I'm sorry, say that again. I lost you for a minute. Can you say that again? I lost you. The context of the statute. The context of the statute and the text of the statute plainly directs FDCSA to review state laws on safety. And once commercial motor vehicle safety has a specific meaning here, which is laws that overlap with federal regulations. And so to the extent that California. Where does it get that specific meaning? Counsel, it gets that specific meaning from a reg promulgated after this decision was made. So at the time, there was no there was no reg that said anything that overlaps with our decisions is about safety. So I'm still stuck with the argument that California is making, which is that our rules aren't about safety at all. They're about something else. So how do we how do you how do we review your decision that they were on safety? So two responses, Your Honor. First, the section 31136, which is the Federal Regulatory Authority about motor vehicle safety, specifically states that regulations on commercial motor vehicle safety are regulations that about the deleterious effect on the physical condition of drivers that are operating vehicles. And that's what California's laws, in fact, do. Now, there's a separate question of, you know, whether California has other local benefits. And it's fine. Laws has no bearing on the question of whether it's like you're still also on commercial motor vehicle safety. If we accept that argument, then two states could have the exact same law. One state could have a law where, like California, they say that they have propagated this law for reasons other than safety. But it's a 30 minute break requirement. And a neighbor state of Nevada might have said, well, we propagated a 30 minute break requirement specifically for safety. The laws might do, you know, in this hypothetical, the exact same thing. And it would be anomalous for the overall purpose of the informant to say one of those state laws is subject to the other one wasn't. We have to look at what the laws do, not at what the state laws do. And that's really all the state states did in this decision to say, what does California law actually do? It actually requires a 30 minute break. And we also, pursuant to our requirement to propagate regulations on safety, we also need a break requirement. So we have to, under 3111, compare these two laws and, you know, determine whether the California laws meet the requirement. I'd also briefly like to address the presumption against exemption. Here, there's an express preemption provision, you know, to look at the plain terms of that provision. Here, you know, it's a little strange to think about applying the presumption against exemption. It's not like the statute says all laws on commercial motor vehicle safety are preempted. It simply says that FMTSA has to review state laws on commercial motor vehicle safety. Of course, you know, agencies are always going to deference their interpretation of the scope of their authority and to be present in the scope of their authority. Can I again ask you a question directed at that? Let's assume California only had one law. All employees who work more than eight hours a day, or work eight hours a day, must be afforded a break every so often. No other laws, they weren't, they hadn't broken them down by industry the way the industrial commission or industrial authority. I'm using Arizona terms, so I'm sure I've mislabeled your agency, Mr. Locker. But the way the California agency does it. If there were only one law that said that, would that be a law on motor vehicle safety? Sorry, so there's only one law and the precise terms of the law. California statute. California legislature passed a statute that says every employee who must be afforded a break at the fifth hour of every eight hour day. Would that be a law on motor vehicle safety? The broad law would not be on commercial motor vehicle safety. As applied to this field, it would be. And that's what, I mean, it's critical here that FDCSA didn't say, you know, the entirety of California's law, you know, section 512 is preemptive. That's not what FDCSA did. What FDCSA did was it said, as applied to this field, the law is a law on commercial motor vehicle safety. So your argument is because you're doing an as applied analysis. It's on motor vehicle safety to the extent it affects motor vehicle safety. It's on motor vehicle safety because it promulgates regulations that clearly are about the physical behaviors of the drivers. There are break requirements. And we know that break requirements are on safety. No one has, no one has disputed that the federal break requirements are requirements on safety. It stands to reason that if California promulgates the exact same, or, you know, the exact same subject matter, that is also a requirement. And so about halfway through my time, so if I may, I'd like to turn to the arguments of the public. I think it's important. So how does FDCSA do this? It's typically delegated to the agencies to make determinations on whether there was a state benefit provided over and above the federal regulations. But I think it's important for others to acknowledge that if you accept the labor rules through bargaining agreements, that all the state has to show is any state benefit. No, I don't think that's what he's saying. I think he's saying that you must at least consider in determining whether a regulation imposes an unreasonable burden on interstate commerce, whether or not it has some benefits also. You might determine that its benefits are not such that they outweigh the burden, but you didn't consider it at all. I'm sorry, Your Honor. I was, perhaps I should be more clear. The three alternative ways in which a state wants to do it. And I'm focusing on the third one. I think you have trouble with the first two. You may think you don't, but I think your strongest argument is with respect to the third one. And I think what Mr. Locker was saying was, look, you have to find that it was an unreasonable burden. And if you don't consider its benefits, you can't determine whether the burden was unreasonable. What's your response to that? So my first response, I think there are two things that are important to say. First, we have to, again, understand this preemption provision against the backdrop that Congress wanted as much reform to be as practical. And the only exception Congress granted here was an exception for laws that were experimental with respect to safety. That's reflected in the actual text of the statute and in the legislative history. We want to give states the ability to experiment with local safety benefits. It might go over and above what some of the regulations are doing, but to the extent a state wants to do other things, they have to do it in a way that doesn't confront the state. And so it makes sense that FMCSA's analysis here focused on the state's safety benefits in comparison to the burdens, rather than, you know, punitive benefits that are difficult to quantify and hard to impact about safety. More importantly, I'm sorry, we're still missing each other here. So let me try this again, because this is of some consequence to me. The preemption provision, if they're on motor vehicle safety and they're more additional to and more stringent than federal regulations, then you can preempt them if they either have no safety benefit or they're incompatible with federal regulations, which I view as sort of an obstacle preemption test, or if they would cause an unreasonable burden on interstate commerce. So focusing only on that last one, can one determine whether a burden is unreasonable without considering the benefit to the people in California of the regulation? The answer may be yes, you can. I don't know, but that's the question I want you to focus on. Yes, and I'm sorry if I wasn't clear. I was trying to explain why it is reasonable for FMCSA to leave that provision to understand unreasonable burden on commerce, as requiring an analysis of what the burdens are on commerce without necessarily looking at what the benefits are to. Right. Could there be a benefit to commerce from what California is doing? I don't know that there's anything in the record supporting that position, Your Honor. I'm certain that if there was, there would be strong arguments here that there was a benefit on commerce, but I haven't heard it in the UK, and I don't think that they were necessarily presented to the agency. What we've seen instead is clear evidence that, you know, among other things, there's a critical parking shortage in the country. Among other things, there are critical records and FMCSA explains critical burdens on employers when they figure out how to deal with and deal with the effects of different laws that have different requirements. I've heard the California Labor Commissioner say that, you know, truck companies would be an exception from this, but part of the FMCSA analysis here was that California is one of many states, and each state is imposing different rate requirements, not only, you know, significantly disrupts the uniformity of the federal state, but it also imposes significant burdens on commerce, quantifiable burdens. Related to that point, counsel, am I correct that the federal regulations apply to vehicles operating in interstate commerce only? So let's say an employer with both intrastate and interstate service would apply the California regulations for purely intrastate trips, but as soon as they essentially move into interstate commerce, then the federal regulations would be triggered under your agency interpretation? Yes, although there's a small caveat here, which is vehicles transporting hazardous goods are subject to, you know, are subject to the federal rules even if they're only operating in the state, but that's a very limited exception. Those vehicles, as far as I'm aware, are not additional. I don't want to hesitate to not overstate this. Yes, this is, the federal hours of service are about interstate commerce. They are about interstate commerce, and so to the extent that an employer is operating entirely intrastate. So doesn't that undercut the uniformity argument? Not at all, Your Honor, because the point is when we have trucking companies interstate, crossing state lines, they are going to be subject to cumulative state laws with different types of different regulations, and if, you know, California's laws impose certain burdens, other states are going to impose additional burdens, and that's exactly what FMCSA considered unreasonable burdening on interstate commerce, with the cumulative effect of all of the different state laws that are applying to employers who are operating across state lines. If there are no further questions, Your Honor, I would ask that we ask that you affirm the FMCSA. Thank you. Thank you, counsel. All right, two minutes on the clock. Thank you, and I'm using my cell phone audio, so hopefully you can hear me a little better. The threshold question before the court is whether or not Congress unambiguously delegated to this agency the power to preempt generally applicable state law, not just law that is specifically directed to commercial motor vehicle safety, as the agency previously viewed its authority, but much broader authority to preempt all sorts of background laws, and I think you can answer that question based on the ordinary tools of statutory construction, because the term on commercial motor vehicle safety is used multiple times throughout these relevant provisions, both the preemption provision and the regulatory provision, and it has to mean the same thing each time it's used, or at least that's how we generally assume we read statutes. If you adopt our reading and the agency's own prior understanding of the statute, it's easy to make the language mean the same thing each time. It's easy to make sense of the preclearance and review provisions. It's easy to make sense of the agency's own regulatory authority, which allows the agency not to adopt generally applicable rules, but rules that are targeted at the subject that it regulates, commercial motor vehicle safety. But if you conclude that there is any ambiguity in this scheme, there are some important interpretive principles that come into play, and history is essential to understanding how to use those interpretive principles, because it is passing strange for an agency after 30 years to conclude that it has this authority that nobody realized it had. Congress doesn't hide elephants in mouse holes. The authority that the agency now says it has, it did not think was a close question. In 2008, it conclusively told everyone it didn't have that authority. Then it came to this court in 2014, and it asked for deference to the position that it lacked that authority. And if you look at the agency's briefs in the U.S. Supreme Court, going back several administrations, every solicitor general describes this authority the same way. And so what the agency has done here is to depart from a consistent understanding of its authority. Now, the government tells you we're allowed to change our mind. That's true. We're not saying they can't change their mind. But when they change their mind, in preemption cases and in deference cases, the Supreme Court has said that matters, because consistency matters to the question of deference, and consistency matters to the question of preemption. And as the Supreme Court said in Bates v. Dow AgriSciences, the notion that a statute contains a nonambiguous command to preempt state law is particularly dubious when the United States has advocated precisely the opposite position just a few years ago. I think you can do this. You can answer this question based on ordinary tools of statutory construction. But if you need to, if you need to resort to the presumption or to principles of deference, those favor our position as well. Thank you. All right. Thank you very much. Judge Press, did you have a question? I wasn't sure if my audio was working there, so I apologize. Can you hear me now? I can. Thank you. My apologies. My question, Mr. Gupta, is just simply that at this point the agency is now taking another look at this, and they're allowed to change their mind if they've given sufficient reasons. Here they've given sufficient reasons. You have some arguments against it. But at the end of the day, what is unreasonable about what they've done? Another FMCSA might approach this differently, but at the end of the day, when we're looking at the changes they made here, why can we conclude this is unreasonable? Well, on the threshold question of statutory authority, it's not just a question of what's reasonable, right? You have to ask first, what do the tools of statutory construction tell you is the best reading of the statute? And we think the tools of statutory construction foreclose their reading for all the reasons that the agency gave you. So at best, what you get is a plausible reading. But what the Supreme Court has said is even where you have equally plausible readings about the meaning of a preemption statute, the court has a duty to adopt the position that disfavors preemption. And so that principle, I think, doubly forecloses their position. And then finally, they're asking you for deference. But when an agency asks for deference, as you said in Dilts, as this court said in Dilts, that turns on whether the agency has a considered and consistent position. And here, the agency has anything but. Thank you. All right. Thank you very much, all counsel, for your arguments in this difficult. I find it a very difficult question. So we really appreciate your helpful arguments. I wish the audio had been a little bit better, but we're always free to go back and review the arguments as well. So I appreciate it. And the matter is submitted for a decision that concludes today's argument calendar. Thank you, counsel. Thank you.
judges: Nguyen, Hurwitz, Bress